The United States Court of Appeals for the Ninth Circuit is now in session. You may be seated. Good afternoon, ladies and gentlemen. And Judge Gould, can you hear us? Yes, I can. Thank you. Great. Good to see you. We'll proceed with the first case on the oral argument calendar, which is Mark Johnson v. Kijakazi. You may proceed. Good afternoon, Your Honors. My name is Jesse Kaplan. I represent Mark Johnson, who is the appellant in this Social Security matter. I make four arguments, and three of them have to do with the administrative law judge decision simply omitting to do something crucial, sometimes very categorically. The ALJ decision doesn't really evaluate the C criteria of the Step 3 listings. It just offers standard boilerplate. It doesn't evaluate at all Mr. Johnson's longtime psychotherapist and what's the case regarding mental disorder. And when it evaluates his psychiatrist, Dr. Johnson, it doesn't apply the new regulations because it doesn't analyze him, Dr. Johnson, in terms of supportability or consistency. So then the fourth argument revolves around the handling of Mr. Johnson and his third party's testimony. I omitted the request, but could I reserve three minutes of time for rebuttal? Manage your own time. Thank you. Let me continue then just dealing with these in the order that I make the arguments, which is actually different, of course, from the order in which the government's arguments are arranged. Let me just suggest briefly regarding the issue of failure to evaluate the C criteria of the listings. I was thinking about this a little bit today and over the years the C criteria have changed and I didn't really look into it and I'm not going to give you an exposition about it, which isn't exactly relevant. But I just want to make the point that what the C criteria look for, especially now, can be viewed as a kind of an alternative to the B severity criteria in the sense that you have four areas in the B criteria and you rate them as to exactly how severe they are. And what the C criteria at this point is looking for could be said to be an alternative to the B criteria in that you could have somebody who is functioning within a very narrow life range and looks okay and would not be rated on the B criteria as severely impaired or at least sufficiently severely impaired. And be found disabled. But if you properly recognize that the individual is only functioning with supports and within a very limited range, then that's kind of an alternative to the B criteria. And if there's no questions regarding that, I just want to move along and offer that for your consideration. The next omission is the one that's a total omission, which is simply that there's nothing said in the decision about the statement by Mr. Johnson's psychotherapist, Linda Paoli. And the one thing that I have to offer... How do you respond to the government's argument that the Paoli letter does not contain a medical opinion? That was what actually I was going to say. And let me... I think it does offer an opinion. And in my brief, I allude or say that we may be getting into some difficult territory under these new regulations about... It doesn't even matter. I mean, this is important evidence, regardless of whether it's an opinion or not. But the danger we're getting into with these regulations is a definition of an opinion that's so narrow that nothing qualifies as an opinion. But the short answer, again, is just there's no... This isn't addressed at all. And this is clearly important evidence in a case regarding mental impairment. Then moving along to his psychiatrist, Dr. Smith. Dr. Smith is addressed, but the new regulation criteria of supportability and consistency are not the approach that's taken. And moreover, the decision gives him partial persuasiveness. So under those circumstances, I submit that his treating status has to be considered. He wasn't deemed to be not consistent with the evidence or not well supported. And once... Well, pardon me. May I interrupt you for just a second? I'm reading now from the ALJ's opinion. He says, moreover, Dr. Smith's opinion that the claimant could handle funds independently is inconsistent with his other significantly limiting opinions. So isn't that sufficient mention of inconsistency, even though really it's a non-supportability rather than inconsistency? Well, obviously, we're still in a realm where what well supported and what consistency means are not terribly well defined. I thought that consistency meant consistency with the record in general rather than consistency with oneself. If we want to entertain that as being consistency, I can... Again, I just have to submit that for a psychiatrist to find that a patient is still able to handle his own money is not inconsistent with an opinion that that patient is disabled. The vast majority of claimants found disabled are allowed to manage their own money. That point is not a strong or a good reason for discounting Dr. Smith. Well, that's not the only basis that he gave. He said that the claimant medications were described as being generally effective and there was no evidence of psychiatric hospitalization that would suggest the same as discussed above. So he says the medications are okay and the man can handle his money. Why isn't that a sufficient finding of insupportability? Well, certainly the word supportability, I seem to be running over my time. The word supportability is not... That's right. He uses inconsistently, erroneously, it should be insupportability. And of course, Mr. Johnson was hospitalized just before this period and was in intensive outpatient therapy on referral from this doctor just a couple of weeks after the relevant time period. And Dr. Smith is taking into consideration these medications. He's the one who's telling us what medications his patient is taking. There's no reason to think he's giving an opinion about his functionality absent the medications that he's using. I guess I'll stop here and reserve this time. Very well. We'll hear from the government. Good afternoon, Your Honors. Elizabeth Feer on behalf of Kilolo Kijikazi, the Acting Commissioner of Social Security. What we have in this case is a man who retired in May 2012 and he retired after working so long and so well that he has a pension. And five years later, he applied for disability benefits. And at that time, he reconnected with Ms. Paoli, the therapist that my opponent is concerned with. He saw Ms. Paoli once and on May 16, 2017, she recommended that he restart medication with his primary physician. And then he did see Dr. Malik the next day and did restart medication. But there's nothing in this record that shows why he didn't just retire, why he's disabled. And what Ms. Paoli's letter says, and our main argument is that it doesn't constitute a medical opinion because it doesn't explain exactly why he would under 1513, the revised regulations. Sorry, I'm a little tongue-tied right now. It doesn't explain within the terms of a work situation why Mr. Johnson would have problems with the specific elements of work-related activities. So to the large extent, she says, I believe he should be entitled to disability benefits. She says, I think his paranoia will prevent him from getting and maintaining work. Well, the major problem with that is while she was treating him, he was working and he did have the same job for 33 years. So to any extent, you can construe something in her letter as actually pertaining to his ability to get and maintain employment or interact with people during that employment. First of all, it's not accurate because he was working while she was treating him. And second of all, the ALJ's RFC finding accounts for any sort of problems the claimant might have with interacting with others. It's occasional contact with co-workers and the public. So how do we know what the ALJ was thinking in terms of the Paoli letter? There's nothing in the opinion, so I credit what you're saying, but that's not what the agency found. Well, he does reference her Exhibit 1F twice in the discussion, once when he's referring to the Step 3 on page 23, and then again on page 27 he refers to it when he's discussing more of the, I believe it's more the subjective allegations. So the ALJ is looking, you can infer from the fact that he cited that particular piece of evidence, that exhibit, that's the only thing that's in that exhibit, is the letter and then the one treatment record on May 16th. So you can infer from that that he's looked at it. And then the other thing is both state agency consultants who reviewed the psychiatric evidence referred specifically to that letter. So Dr. Bode, or Boyd, in the beginning, she refers to it on pages 65, 69, hold on, 67. I think in the end, though, we don't have any analysis from the ALJ as to whether it's a medical opinion or why specifically it was rejected. Now that may or may not alter the outcome, but you have to agree that the ALJ doesn't analyze that evidence at all, correct? Well, it doesn't analyze it, references it, but doesn't specifically say, I'm not addressing this because it's not a medical opinion. But the regulations don't specify that kind of, that unless an ALJ says this isn't a medical opinion, somehow there had to be more articulation to it. And so because our major position here is that it's not a medical opinion, the ALJ wasn't required to address it. The ALJ is required to consider it. And these regulations, as opposed to the older ones, now have, they specifically say evidence we consider, and that's 15, categories of evidence are in 1513. And that's where you find what the definition of a medical opinion is. Then we have evidence we consider, and that's 1520B. And then 1520C talks about evidence that the ALJ actually has to articulate. And so in the, the only thing that's affirmatively has to be articulated is related to medical opinions. So if you're going to, and that's, you know, we all know that's the supportability and the consistency, but if you're going to say that something that's not a medical opinion, meaning that it doesn't have to be articulated, that an ALJ's decision doesn't stand unless he actually says that, I don't think that's, that's a fair reading of the revised regulation. Judge Gould, if I could interject a question. Yes. How do, how do we know as a reviewing court, if the ALJ made a rational decision thinking it was not a medical opinion if we haven't been given any reasons for that? Well, Your Honor, I think you can, the fact that the ALJ didn't address it when he did address other evidence in the record that he did classify as medical opinion evidence is, is you can infer from that. And your case law does say that reviewing courts can make reasonable inferences from an ALJ's decision. So reasonable inference here, two things, that the ALJ did look at that evidence because he cited that, that particular exhibit and he didn't feel the need to address that evidence specifically because he found it wasn't a medical opinion and the new regulations only require someone to articulate medical opinion evidence. But all of that aside, Your Honors, I think if you, you know, you could also look at this decision as that any failure of the ALJ to specifically address Ms. Paoli's letter is harmless. And again, what I said is she only saw the claim at once during the relevant time period and that was the same month he applied for benefits. He sought to reconnect with her because he didn't have any treatment evidence between the time he retired and the time he started applying for the benefits. So my opponent refers to this hospitalization, but that was 2011. There's no records pertaining to it in the record. He didn't retire until May 2012. That's his alleged onset date. And so Ms. Paoli's, any evidence from her is not substantial because not only did she not treat him during the relevant period, but the things that she says in her letter are actually contradicted by her actual treatment. And as I said, she was treating him while he was working. And she says things in the letter sort of pertaining to how his union kind of let him get away with some things, but that's not documented anywhere. And plus, I don't think a union would give him a pension if he hadn't followed, you know, the requirements of being a decent union employee. Your time is running down, so I want to give you time to turn to Dr. Smith's issue. The problem from the record is the ALJ clearly rejects Dr. Smith's opinion and does say inconsistent, use the word inconsistency, with the use of funds. But it's kind of hard to see how the ALJ complied with the regulations in terms of dealing with that. There are no specific findings on that other than the mention of consistency. Do you agree? Well, he does also say that in terms of the decompensation, you know, the undersigned disagrees the claimant would be expected to decompensate. And then he talks about medications being generally effective. That's another completely different factor. And the record clearly shows that once he restarted Cymbalta, these things that, for instance, Ms. Paoli were talking about, these alleged anger issues or alleged paranoia, were immediately alleviated. And that's in the CE's opinion from Dr. Giannulli. The claimant clearly says that his symptoms have improved with that Cymbalta. So the ALJ does say that with Dr. Smith's opinion. That's inconsistent with the record as a whole. And I would like to point out that in Woods, your most recent case, the case published on the new regulations, there's a footnote four that talks about how the ALJ in that case really meant supportability, or really meant that he was discussing the particular doctor's opinion in terms of its consistency with the record overall. And the court said it would be better if the ALJ is going forward, use these two terms supportability and consistency more precisely. But that wasn't fatal to the outcome in Woods, and it shouldn't be fatal to the outcome here. Because this record simply does not support any, certainly any allegation that claimant is so fragile and lives in such a structured environment that he satisfies the C criteria. That's just completely unsupported by this record. And what is also unsupported is any idea that he had some kind of significant treatment between the time that he retired and the time that he applied for benefits. This record contains adequate, substantial evidence that supports the ALJ's findings, even if it could have been a little bit better articulated. Thank you, counsel. We'll hear from you. Thank you. I believe you're muted. I apologize. Most of this discussion with opposing counsel illustrates the importance of Dr. LCSW Paoli's letter. If you put what she says in her letter about Mr. Johnson's union supporting him, him getting into trouble and so on, together with Mr. Johnson's testimony about how they didn't care about his attendance at work until the last couple of years, and put that together with the hospitalizations, which happened right before he stopped. And the other thing that he testifies to, Mr. Johnson does, is that he used up all his leave before he retired. So what Paoli is identifying really are two problems that he would have with working attendance and the interactions. And she contributes a great deal to understanding how he was able to work and yet wound up not being able to work, disabled, so to speak. And that reconciles any ambiguities in what she says. I guess I'm running out of my time here. Let me just say one thing. I don't think the evidence, the medication, the improved him is at all specific or clear enough to be meaningful. I'll stop. Thank you both for your arguments this morning. The case just argued will be submitted for decision.
judges: THOMAS, GOULD, BEA